Devin A. McRae, State Bar Number 223239
dmcrae@earlysullivan.com
Peter Scott, State Bar Number 247786
pscott@earlysullivan.com
Brett G. Moore, State Bar Number 311637
bmoore@earlysullivan.com
Lauren Barland, State Bar Number 355973
lbarland@earlysullivan.com
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Plaintiff Nicholas Antosca

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| NICHOLAS ANTOSCA, an individual, | Case No. 2:26-cv-5953 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| HENRY CHAISSON, an individual; DOES 1-10, inclusive, | |
| Defendants. | |

**COMPLAINT**

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

## I.      INTRODUCTION

1.      This action concerns the ownership, authorship, and unauthorized exploitation of a feature film that Defendant Henry Chaisson is preparing to unveil to the world at the Tribeca Film Festival.

2.      Plaintiff Nick Antosca is the creator and sole author of the original short story The Noble Rot, an original work of authorship accepted for publication by McSweeney's. Antosca subsequently developed The Noble Rot into a feature-film project and invited Defendant Henry Chaisson—a trusted prior collaborator—to participate in that development process.

3.      What followed was not a casual exchange of ideas. It was a months-long creative collaboration involving unpublished literary material, screenplay drafts, outlines, beat sheets, character studies, structural frameworks, thematic development, visual references, and proprietary creative concepts. Antosca entrusted Chaisson with access to a literary property that had not yet been adapted and with extensive development materials created for the purpose of transforming The Noble Rot into a feature film.

4.      Antosca shared those materials because he believed he was working toward a common project with a trusted collaborator. He did not authorize Chaisson to use those materials to create a separate feature film. He did not authorize Chaisson to appropriate the resulting creative expression for Chaisson's sole benefit. And he did not authorize Chaisson to exclude him from ownership, authorship, credit, compensation, and participation in a project derived from the very materials Antosca had entrusted to him.

5.      Yet that is precisely what occurred.

6.      Antosca recently learned that Chaisson has written, developed, directed, and is actively exploiting a feature film entitled Recluse, which is scheduled to make its world premiere at the Tribeca Film Festival ("Tribeca") on June 4, 2026.

7.    Upon reviewing the screenplay, promotional materials, pitch deck, trailer, and related development materials associated with Recluse, Antosca discovered a work that appropriates and exploits core protected elements of The Noble Rot and the screenplay adaptation that Antosca and Chaisson developed together.

8.    The similarities are not confined to broad genre conventions, stock horror tropes, or unprotectable ideas. Both works center upon an estranged adult daughter returning to an isolated estate dominated by the legacy of a celebrated artist father. Both works depict the father's artistic practice as something more than art—a mechanism through which influence survives death and extends beyond ordinary limits of family, memory, and inheritance. Both works transform the family estate into a psychological and supernatural landscape shaped by the father's continuing presence. Both works unfold through the gradual discovery of hidden histories, ritual traces, concealed family secrets, and evidence that the father's creative work served as a conduit for posthumous power.

9.    These similarities are particularly significant because Chaisson did not encounter The Noble Rot through publication, rumor, coincidence, or independent creation. He received the short story directly from Antosca. He participated in the adaptation process. He reviewed and exchanged screenplay materials, outlines, structural concepts, character documents, visual references, and development notes. He contributed to a screenplay that expressly identified Antosca's short story as its source material.

10.    Nevertheless, Chaisson now seeks to publicly exploit Recluse as his own feature film while excluding Antosca from ownership, authorship, credit, compensation, and participation.

11.    The timing of Defendants' conduct makes immediate judicial intervention necessary. A premiere at Tribeca is not merely a screening. It is a commercial launch. It is a marketplace event that attracts distributors, financiers, sales

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

3

**COMPLAINT**

agents, exhibitors, critics, journalists, and future business opportunities. Once Recluse is publicly premiered and introduced into the stream of commerce, the resulting harm to Antosca's ownership interests, authorship rights, and future exploitation opportunities cannot be fully remedied through an award of money damages.

12. Antosca therefore brings this action to protect his copyrights, vindicate his ownership interests, obtain declaratory and equitable relief, recover profits derived from the unauthorized exploitation of his work, and preserve the status quo before Defendants irrevocably capitalize on intellectual property that does not belong exclusively to them.

## II. PARTIES

13. Plaintiff Nick Antosca ("Antosca") is, and at all relevant times was, an individual residing in the County of Los Angeles in the State of California.

14. Antosca is an accomplished author, screenwriter, producer, and creator of numerous literary, television, and motion-picture works. Antosca is the sole author of the short story The Noble Rot and is a co-author of the screenplay adaptation of The Noble Rot developed with Defendant Chaisson.

15. Defendant Henry Chaisson ("Chaisson") is, and at all relevant times was, an individual residing in the State of New Hampshire.

16. Upon information and belief, Chaisson wrote, directed, developed, financed, produced, marketed, promoted, and/or otherwise participated in the creation and exploitation of the feature film Recluse.

## III. JURISDICTION AND VENUE

19. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

20. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal copyright claims.



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

4

COMPLAINT

21. This Court additionally has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff Nicholas Antosca is, and at all relevant times was, a citizen of the State of California. Defendant Henry Chaisson is, and at all relevant times was, a citizen of the State of New Hampshire. Complete diversity exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as the value of the ownership interests, authorship rights, copyright interests, prospective exploitation rights, distribution opportunities, and other relief sought herein substantially exceeds the jurisdictional minimum.

22. This Court has personal jurisdiction over Defendant Chaisson because Chaisson purposefully directed activities toward this forum, knowingly engaged in conduct causing injury within this forum, collaborated extensively with Plaintiff while Plaintiff resided and worked within this forum, and has sought to exploit the subject intellectual property within this forum.

23. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, because Defendants have purposefully directed activities toward this District, and because acts of infringement and exploitation have occurred and continue to occur within this District.

## IV.  FACTUAL BACKGROUND

### A.  ANTOSCA CREATES THE NOBLE ROT

24. In 2022, Antosca wrote an original short story entitled The Noble Rot.

25. The Noble Rot is a work of gothic and psychological horror centered on an estranged daughter who returns to a sprawling estate built and dominated by the legacy of her father, a celebrated artistic genius whose influence persists beyond death.

26. The story explores themes of inheritance, artistic obsession, family trauma, memory, authorship, identity, supernatural influence, and the lingering power that great artists can exert over those who survive them.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

27. The Noble Rot was subsequently accepted for publication by McSweeney's.

28. From the moment of creation, Antosca owned and continues to own the copyright in The Noble Rot.

**B.    PRIOR COLLABORATION BETWEEN ANTOSCA AND CHAISSON**

29. Long before the events giving rise to this action, Antosca and Chaisson enjoyed a successful creative relationship.

30. Among other projects, the parties collaborated on The Quiet Boy, which was later adapted into the feature film Antlers.

31. Through that collaboration, the parties developed a relationship of professional trust and confidence.

32. Antosca reasonably believed that Chaisson was a trusted creative partner with whom he could freely exchange unpublished literary materials, development concepts, and confidential creative ideas.

33. That trust became the foundation for the parties' subsequent work on The Noble Rot.

**C.    DEVELOPMENT OF THE NOBLE ROT FEATURE ADAPTATION**

34. In or about March 2023, Antosca approached Chaisson regarding a feature-film adaptation of The Noble Rot.

35. Antosca provided Chaisson with the short story and invited him to participate in the adaptation process.

36. Over the ensuing months, Antosca supplied Chaisson with extensive adaptation materials, including outlines, structural concepts, character studies, story beats, thematic frameworks, development notes, visual references, and screenplay concepts.

6

**COMPLAINT**

37.    The parties met, corresponded, exchanged documents, and worked collaboratively to transform the short story into a feature-film project.

38.    During this process, Antosca shared materials that had never been publicly released and that possessed independent creative and commercial value.

39.    The parties exchanged those materials with the understanding that they were being developed for the purpose of a single adaptation project based upon The Noble Rot.

**D.    JOINT DEVELOPMENT OF THE SCREENPLAY**

40.    As development progressed, the parties jointly developed a feature screenplay adaptation of The Noble Rot.

41.    The screenplay reflected substantial contributions from both Antosca and Chaisson while remaining expressly derived from Antosca's original short story.

42.    The screenplay itself identified Antosca and Chaisson as co-writers and identified The Noble Rot short story as the underlying source material.

43.    Throughout the development process, the parties exchanged screenplay drafts, structural revisions, character arcs, thematic concepts, scene ideas, visual references, and development materials.

44.    Antosca continued to share confidential and proprietary creative information with Chaisson because he believed the parties were working toward a common project.

45.    At no point did Antosca authorize Chaisson to use those materials to create a separate feature film excluding Antosca.

46.    Throughout the parties' collaboration, it was understood that The Noble Rot originated with Antosca and that any feature-film adaptation derived from The Noble Rot would involve Antosca as an owner, author, creative participant, and beneficiary of the resulting project. At no point did Antosca authorize Chaisson to independently exploit the project or any derivative work arising from the parties' collaboration while excluding Antosca from ownership, credit, participation, or



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

7

**COMPLAINT**

compensation.

**E.    CHAISSON'S ACCESS TO PLAINTIFF'S MATERIALS**

46.    Chaisson had direct access to The Noble Rot short story.

47.    Chaisson had direct access to the screenplay adaptation developed by the parties.

48.    Chaisson had direct access to development materials, outlines, pitch materials, visual references, beat sheets, character studies, structural concepts, and other creative materials provided by Antosca.

49.    Chaisson received those materials directly from Antosca.

50.    Chaisson participated in discussions concerning the development of those materials.

51.    Chaisson understood that those materials originated from Antosca and the parties' collaborative adaptation efforts.

52.    Chaisson understood that those materials were being shared for purposes of developing The Noble Rot adaptation project.

**F.    DISCOVERY OF RECLUSE**

53.    Antosca recently learned that Chaisson had written, developed, directed, and completed a feature film entitled Recluse.

54.    Upon information and belief, Recluse was developed without Antosca's knowledge or consent.

55.    Upon information and belief, Chaisson has publicly represented Recluse as his own feature film.

56.    Recluse is scheduled to premiere at the Tribeca Film Festival on June 4, 2026.

57.    Antosca thereafter reviewed the Recluse screenplay, promotional materials, pitch materials, visual development materials, trailer, and related materials.

58.    That review revealed extensive similarities between Recluse and The Noble Rot.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## G.    SIMILARITIES BETWEEN THE NOBLE ROT AND RECLUSE

59.    The similarities between the works extend far beyond general horror concepts, scènes à faire, or stock genre conventions.

60.    Both works center upon an estranged adult daughter returning to an isolated estate dominated by the legacy of a famous artist father.

61.    Both works involve a father whose artistic practice functions as a mechanism for continuing influence beyond death or physical decline.

62.    Both works depict the estate itself as an extension of the father's identity and continuing control.

63.    Both works employ hidden histories, ritual traces, family secrets, and investigative discoveries as the primary engine of the narrative.

64.    Both works explore inheritance as a form of possession and artistic legacy as a mechanism of control.

65.    Both works utilize recurring imagery associated with fire, transformation, ritual objects, hidden spaces, artistic creation, and supernatural influence.

66.    Both works depict a celebrated artistic patriarch whose work has generated both public admiration and private destruction.

67.    Both works progressively reveal that the father's creative practice was not merely artistic expression but a means of exerting power over others.

68.    Viewed individually and collectively, these similarities reflect substantially similar creative expression and substantially similar narrative architecture.

69.    The similarities are particularly significant because Chaisson had direct access to Antosca's work and participated in the development process from which those creative elements emerged.

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP ATTORNEYS AT LAW

5849815.1

9

COMPLAINT

## H. NOTICE TO DEFENDANTS

70. On or about May 31, 2026, Antosca, through counsel, notified Chaisson of the claims described herein.

71. Antosca demanded that Chaisson cease further exploitation of Recluse pending resolution of the parties' dispute.

72. Antosca further demanded preservation of evidence, production of chain-of-title materials, disclosure of financial arrangements, and confirmation that further exploitation would cease pending resolution of the dispute.

73. Despite receiving notice of Plaintiff's claims, Defendant has continued to pursue the premiere and exploitation of Recluse.

## I. IMMINENT AND IRREPARABLE HARM

74. The impending premiere of Recluse threatens injuries that cannot be adequately remedied through an award of monetary damages.

75. The Noble Rot remains a valuable literary property capable of further development, financing, licensing, adaptation, and exploitation through authorized channels.

76. Plaintiff possesses a substantial interest in controlling when, how, and under what circumstances his work is adapted and exploited.

77. If Defendant is permitted to premiere and exploit Recluse before the parties' ownership dispute is adjudicated, the marketplace will inevitably perceive Recluse as the definitive motion-picture embodiment of creative expression originating in The Noble Rot.

78. Such marketplace confusion cannot later be undone through monetary relief.

79. The public release and promotion of Recluse will impair Plaintiff's ability to market, finance, license, sell, and otherwise exploit authorized adaptations of The Noble Rot.

80. Potential producers, financiers, distributors, and other industry participants may reasonably conclude that the property has already been adapted, thereby diminishing its uniqueness, value, and future marketability.

81. Plaintiff will further suffer irreparable reputational injury because Defendants are publicly presenting creative expression originating with Plaintiff as a work authored solely by Chaisson.

82. Each screening, review, press article, interview, festival appearance, promotional campaign, and distribution transaction will further entrench confusion concerning ownership and authorship of the underlying work.

83. Plaintiff's damages cannot be calculated with reasonable certainty because the future distribution, financing, licensing, publicity, and exploitation opportunities associated with Recluse remain unknown and inherently speculative.

84. Absent immediate injunctive relief, Plaintiff will suffer continuing and irreparable injury for which there is no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Copyright Infringement

### (17 U.S.C. § 501)

### Against Defendant Henry Chaisson

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. Plaintiff is the sole author and owner of the copyright in the short story The Noble Rot.

87. The Noble Rot constitutes an original work of authorship fixed in a tangible medium of expression and protected by the Copyright Act.

88. Defendant Chaisson had direct access to The Noble Rot.

89. Defendant Chaisson received the short story directly from Plaintiff.

90. Defendant Chaisson further had direct access to the screenplay adaptation of The Noble Rot, as well as extensive development materials, outlines,

5849815.1

11

COMPLAINT

character studies, structural concepts, visual references, and other creative materials originating with Plaintiff.

91.     Upon information and belief, Defendant Chaisson copied protected expression from The Noble Rot in creating Recluse.

92.     Recluse is substantially similar to The Noble Rot in numerous protectable respects, including but not limited to the works' narrative architecture, sequence of events, thematic framework, character relationships, artistic mythology, treatment of inheritance, use of a famous artist father, depiction of an isolated estate as an extension of the father's identity, and the progression by which the protagonist discovers that the father's artistic practice serves as a mechanism for continuing influence beyond death.

93.     Both works employ a highly specific combination of expressive elements that, taken together, transcend general genre conventions, scènes à faire, or stock horror tropes.

94.     Among other similarities, both works center on an estranged daughter returning to an isolated estate dominated by the legacy of a famous artist father; both depict art as a form of occult or supernatural technology; both treat the estate as a manifestation of the father's continuing presence; and both unfold through the discovery of hidden histories, ritual traces, and concealed family secrets.

95.     The similarities between the works are so numerous, specific, and interconnected that they cannot reasonably be explained by coincidence, independent creation, or generalized genre conventions.

96.     Defendant Chaisson's access to Plaintiff's work, combined with the substantial similarities between the works, demonstrates copying of protected expression.

97.     Defendant Chaisson's conduct was willful.

98.     Defendant Chaisson knew that Plaintiff was the author of The Noble Rot.

5849815.1

12

**COMPLAINT**

99. Defendant Chaisson knew that Plaintiff had provided him with the materials at issue for purposes of developing The Noble Rot.

100. Nevertheless, Defendant Chaisson proceeded to create, exploit, market, promote, and publicly exhibit Recluse without Plaintiff's authorization.

101. As a direct and proximate result of Defendant Chaisson's conduct, Plaintiff has suffered and will continue to suffer damages.

102. Plaintiff is entitled to actual damages, statutory damages to the extent available, disgorgement of profits, injunctive relief, attorneys' fees, costs, and all other relief authorized by law.

## SECOND CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C. § 2201)

### Against Chaisson

103. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

104. An actual and present controversy exists concerning ownership, authorship, and exploitation rights relating to Recluse.

105. Plaintiff contends that Recluse incorporates intellectual property originating in The Noble Rot and the parties' collaborative adaptation efforts.

106. Plaintiff further contends that Defendant Chaisson is not entitled to exploit Recluse as though it were entirely his own creation while denying Plaintiff's ownership, authorship, and economic interests.

107. Defendant Chaisson disputes Plaintiff's claims and has proceeded to exploit Recluse without recognizing Plaintiff's rights.

108. The controversy is ripe for adjudication.

109. Judicial resolution is necessary because Recluse is presently being marketed, promoted, exhibited, and exploited.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

13

**COMPLAINT**

110.   Plaintiff seeks a declaration that:

a.   Plaintiff is the sole author and owner of The Noble Rot;

b.   Plaintiff possesses ownership and/or authorship interests in intellectual property embodied in Recluse;

c.   Defendant Chaisson may not further exploit Recluse without accounting for and respecting Plaintiff's rights;

d.   Plaintiff is entitled to appropriate authorship credit, ownership recognition, compensation, and participation in connection with Recluse; and

e.   Defendants' respective rights and obligations shall be determined by the Court.

## THIRD CAUSE OF ACTION

### Breach of Implied-in-Fact Contract

### Against Defendant Henry Chaisson

111.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112.   At all relevant times, Plaintiff Antosca was the creator and owner of The Noble Rot and extensive related development materials, including screenplay drafts, story concepts, character studies, thematic frameworks, outlines, beat sheets, visual references, pitch materials, and adaptation concepts.

113.   Plaintiff disclosed The Noble Rot and related materials to Defendant Chaisson in connection with the parties' collaborative effort to develop a feature-film adaptation of the property.

114.   The disclosures were not gratuitous.

115.   Plaintiff disclosed the materials with the expectation that if the materials, concepts, development work, screenplay elements, or derivative adaptations thereof were used, Plaintiff would receive appropriate ownership recognition, authorship credit, creative participation, compensation, and economic benefit.

5849815.1

14

**COMPLAINT**

116. Those expectations were understood by both parties and were consistent with established custom and practice within the motion-picture and television industries.

117. At all relevant times, Defendant Chaisson knew that Plaintiff was the creator of The Noble Rot.

118. Defendant Chaisson knew that Plaintiff was disclosing the materials for purposes of developing a feature-film project based upon The Noble Rot.

119. Defendant Chaisson knew that Plaintiff expected to participate in and benefit from any resulting project derived from The Noble Rot and the parties' collaborative development efforts.

120. Defendant Chaisson voluntarily accepted Plaintiff's disclosures and accepted the benefits of access to Plaintiff's materials.

121. Defendant Chaisson thereafter reviewed, utilized, discussed, developed, and worked with Plaintiff's materials in connection with the parties' adaptation efforts.

122. Through their course of dealing, communications, collaborative development process, and mutual participation in the adaptation project, Plaintiff and Defendant Chaisson formed an implied-in-fact agreement that Plaintiff would receive appropriate ownership recognition, authorship credit, participation, and compensation if the disclosed materials were used in a motion-picture project.

123. Plaintiff fully performed all obligations required of him under the implied agreement.

124. Plaintiff provided the short story, participated in the adaptation process, shared development materials, collaborated on screenplay development, and contributed substantial creative expression and development work.

125. Defendant Chaisson breached the parties' implied agreement by using Plaintiff's materials, development work, and creative contributions in connection with Recluse while excluding Plaintiff from ownership, authorship, credit, compensation, and participation.


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

15
**COMPLAINT**

126. Defendant Chaisson further breached the implied agreement by publicly presenting Recluse as his own work without recognizing Plaintiff's rights and interests.

127. Upon information and belief, Defendant Chaisson has received and continues to receive substantial economic, professional, reputational, and commercial benefits arising from Recluse.

128. As a direct and proximate result of Defendant Chaisson's breaches, Plaintiff has suffered damages in an amount to be proven at trial.

129. Plaintiff is entitled to recover compensatory damages, restitution, disgorgement, equitable relief, declaratory relief, attorneys' fees where authorized, and such further relief as the Court deems proper.

130. Defendant Chaisson's conduct was knowing, deliberate, and undertaken in conscious disregard of Plaintiff's rights and expectations arising from the parties' collaborative relationship.

## FOURTH CAUSE OF ACTION

### Accounting

### Against Defendant Henry Chaisson

131. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

132. Defendant Chaisson has received, and continues to receive, funds, benefits, opportunities, and economic value arising from Recluse.

133. Plaintiff claims ownership, authorship, and economic interests in the intellectual property embodied in Recluse.

134. The financial arrangements associated with Recluse are presently unknown to Plaintiff.

//

//

//

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP ATTORNEYS AT LAW

5849815.1

16

**COMPLAINT**

135. Upon information and belief, such arrangements include financing agreements, production agreements, distribution agreements, sales agreements, festival arrangements, licensing agreements, and other revenue-generating transactions.

136. Plaintiff lacks access to the information necessary to determine the full amount of revenues, benefits, and profits generated through Recluse.

137. Equity therefore requires a full accounting.

138. Plaintiff is entitled to an accounting of all funds, revenues, benefits, opportunities, agreements, and consideration received or expected to be received in connection with Recluse.

## FIFTH CAUSE OF ACTION

### Constructive Trust

### Against Defendant Henry Chaisson

139. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140. Recluse and the proceeds derived therefrom constitute identifiable property and assets.

141. Plaintiff claims ownership and equitable interests in those assets.

142. Defendant Chaisson acquired and continues to possess those assets through conduct that infringes Plaintiff's rights and exploits intellectual property originating with Plaintiff.

143. Equity and good conscience require that Defendant Chaisson not be permitted to retain the benefits derived from such conduct.

144. Plaintiff therefore seeks imposition of a constructive trust over Recluse and all revenues, proceeds, benefits, and interests derived therefrom.

//

//

//

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5849815.1

17

**COMPLAINT**

# SIXTH CAUSE OF ACTION

**Breach of Confidence / Misappropriation of Confidential Creative Materials**

**Against Defendant Henry Chaisson**

145. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

146. Plaintiff disclosed The Noble Rot, together with extensive unpublished development materials, screenplay drafts, outlines, character studies, thematic frameworks, visual references, and related creative materials, to Defendant Chaisson in confidence and for a limited purpose.

147. The disclosures were made in connection with the parties' collaborative effort to develop a feature-film adaptation of The Noble Rot.

148. Plaintiff reasonably expected that Defendant Chaisson would use the materials solely for purposes of the parties' joint adaptation project.

149. Defendant Chaisson understood the confidential nature of the materials and understood the limited purpose for which they were disclosed.

150. Defendant Chaisson accepted and used the materials under circumstances creating an obligation not to exploit them outside the parties' collaborative project without Plaintiff's authorization.

151. Defendant Chaisson breached that obligation by using Plaintiff's confidential creative materials to develop, write, direct, produce, market, and exploit Recluse.

152. Defendant Chaisson further breached that obligation by excluding Plaintiff from ownership, authorship, credit, compensation, and participation in connection with Recluse.

153. As a direct and proximate result of Defendant Chaisson's conduct, Plaintiff has suffered damages and is entitled to equitable and monetary relief.

## SEVENTH CAUSE OF ACTION

### Injunctive Relief

### Against Defendant Chaisson

154. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

155. Defendant is engaging in ongoing conduct that infringes Plaintiff's rights and threatens immediate and irreparable injury.

156. Unless restrained by this Court, Defendant Chaisson will continue to market, promote, exhibit, distribute, license, finance, and otherwise exploit Recluse.

157. Such conduct will cause injuries that cannot be adequately compensated through an award of money damages.

158. Plaintiff has no adequate remedy at law.

159. The balance of hardships strongly favors Plaintiff.

160. Defendant faces only the delay of exploitation of a disputed work pending adjudication of the parties' rights.

161. By contrast, Plaintiff faces permanent loss of control over his intellectual property, loss of marketplace opportunities, reputational injury, and destruction of the ability to control the first exploitation of his work.

162. The public interest favors protecting intellectual-property rights, preserving the integrity of authorship and ownership, preventing marketplace confusion, and ensuring that disputed works are not exploited before ownership claims are adjudicated.

163. Plaintiff is therefore entitled to preliminary and permanent injunctive relief.

//
//
//
//

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5849815.1

19

**COMPLAINT**

## **ADDITIONAL ALLEGATIONS REGARDING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

164. Plaintiff seeks emergency injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

165. Plaintiff is likely to succeed on the merits of his claims.

166. Defendant Chaisson had direct access to Plaintiff's short story, screenplay adaptation, development materials, pitch materials, visual references, and related creative works.

167. The similarities between The Noble Rot and Recluse are substantial and pervasive.

168. The similarities extend beyond isolated scenes or generalized themes and encompass narrative structure, artistic mythology, thematic architecture, character relationships, visual motifs, and the specific combination of expressive elements that define the works.

169. Plaintiff will suffer irreparable harm absent immediate injunctive relief.

170. The Noble Rot remains a valuable literary property capable of future adaptation, financing, licensing, and exploitation.

171. If Recluse is publicly premiered and marketed as Defendant Chaisson's work, Plaintiff's ability to develop and exploit authorized adaptations of The Noble Rot will be permanently impaired.

172. Potential studios, financiers, distributors, producers, and other industry participants may conclude that the property has already been adapted and commercially exploited.

173. Once that perception takes hold in the marketplace, it cannot be meaningfully reversed.

174. Plaintiff will further suffer irreparable reputational harm because Defendants are publicly attributing creative expression originating with Plaintiff to Defendant Chaisson.

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5849815.1

20

**COMPLAINT**

175. Every screening, review, interview, festival appearance, article, and promotional campaign concerning Recluse further entrenches confusion concerning authorship and ownership.

176. Such injuries are inherently difficult or impossible to quantify.

177. The balance of equities strongly favors Plaintiff.

178. Any hardship suffered by Defendant Chaisson results from his decision to proceed with exploitation despite notice of Plaintiff's claims.

179. By contrast, Plaintiff faces the permanent loss of rights that cannot be restored after public release.

180. The public interest favors preservation of the status quo until ownership and authorship disputes can be adjudicated.

181. The public interest likewise favors accurate attribution of creative works and protection of copyright interests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Chaisson as follows:

1. For a temporary restraining order immediately enjoining Defendant Chaisson, and all persons acting in concert with him, from premiering, exhibiting, screening, distributing, licensing, financing, marketing, promoting, selling, transferring, assigning, or otherwise exploiting Recluse pending further order of the Court;

2. For a preliminary injunction and permanent injunction prohibiting further exploitation of Recluse unless and until Plaintiff's rights have been adjudicated;

3. For a declaration that Plaintiff is the sole author and copyright owner of The Noble Rot;

4. For a declaration that Plaintiff possesses ownership, authorship, economic, and/or equitable interests in intellectual property embodied in Recluse;

5. For a declaration that Defendant Chaisson is not entitled to exploit Recluse without recognizing and accounting for Plaintiff's rights;

6. For a declaration that Plaintiff is entitled to ownership recognition, authorship credit, and participation in connection with Recluse consistent with the parties' implied agreement;

7. For an order requiring Defendant Chaisson to provide a complete accounting of all financing agreements, production agreements, distribution agreements, sales agreements, festival agreements, licensing agreements, insurance policies, chain-of-title materials, revenues, profits, advances, guarantees, contingent compensation arrangements, and other agreements relating to Recluse;

8. For compensatory damages arising from Defendant Chaisson's breach of the parties' implied-in-fact agreement, in an amount to be proven at trial;

9. For damages representing the value of ownership interests, authorship rights, producer participation, writing credit, backend participation, contingent compensation, and other benefits wrongfully denied to Plaintiff;

10. For an order requiring appropriate authorship and ownership attribution in connection with all future exhibitions, marketing, distribution, promotion, and exploitation of Recluse;

11. For disgorgement of all profits, revenues, benefits, and consideration derived from Recluse;

12. For imposition of a constructive trust over Recluse and all proceeds derived therefrom;

13. For actual damages according to proof;

14. For statutory damages to the extent permitted by law;

15. For restitution and unjust-enrichment damages;

16. For attorneys' fees and costs;

17. For prejudgment and post-judgment interest;

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

18.    For an order requiring Defendant Chaisson to identify and provide notice of this dispute to all producers, financiers, distributors, sales agents, insurers, exhibitors, streamers, studios, and other entities possessing or claiming an interest in *Recluse*;

19.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  June 2, 2026

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP


By: _____
          Devin A. McRae
          Peter Scott
          Brett G. Moore
          Lauren Barland
          Attorneys for Plaintiff Nicholas Antosca